MICHAEL A. CAMARA & another[1] *vs.* ATTORNEY GENERAL
& another.[2]

Bristol. November 4, 2010. - January 25, 2011.

Present: SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Attorney General. Labor,* Wages. *Contract,* Employment. *Words* "Special
contract."

An employer's written policy, under which an employee found by the employer
to be at fault in an accident involving the employer's vehicles could agree
to a deduction from his or her earned wages in lieu of discipline, constituted
a "special contract" in contravention of G. L. c. 149, § 148, a provision of
the Massachusetts Wage Act (Wage Act) [759-761]; further, the wage
deductions made by the employer under the policy did not amount to valid
set-off deductions within the meaning of § 150 of the Wage Act, where,
given that the employer served as the sole arbiter making a unilateral as-
sessment of liability and damages, no clear and established debt existed
[761-764].

CIVIL ACTION commenced in the Superior Court Department on
April 15, 2008.

The case was heard by *David A. McLaughlin,* J., on a motion
for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Karla E. Zarbo,* Assistant Attorney General (*Anita Maietta,*
Assistant Attorney General, with her) for the Attorney General.

*Thomas E. Pontes* for the plaintiffs.

*Shannon Liss-Riordan, Ian O. Russell, & Audrey R. Richard-
son,* for Massachusetts Employment Lawyers Association &
others, amici curiae, submitted a brief.

BOTSFORD, J. In this case we consider whether the written
policy of the plaintiff ABC Disposal Service, Inc. (ABC), under

---

[1]ABC Disposal Service, Inc. We shall refer to a single plaintiff.

[2]Division of administrative law appeals (DALA).

which a worker found by ABC to be at fault in an accident in-
volving company trucks may agree to a deduction from earned
wages in lieu of discipline, violates a key provision of the Mas-
sachusetts Wage Act, G. L. c. 149, § 148 (§ 148).[3] In ruling on
the plaintiff's appeal from a decision of the division of admini-
strative law appeals (DALA), a judge in the Superior Court
concluded that the written policy was consistent with § 148.
Giving deference to the Attorney General's reasonable interpreta-
tion of the Wage Act, G. L. c. 149, §§ 148 and 150, and in
agreement with DALA, we conclude that the statute prohibits
wage deductions associated with an employer's unilateral deter-
mination of an employee's fault and damages; and that the ABC
policy, by withholding employees' wages, contravenes the Wage
Act. We therefore reverse the judgment of the Superior Court.[4]

*Background.* The facts are not contested.[5] ABC is a Mas-
sachusetts corporation with a usual place of business in New
Bedford. The plaintiff, Michael Camara, is its vice-president
and qualifies as a statutory employer of ABC's employees within
the meaning of the Wage Act. ABC provides curbside collection
and disposal of solid waste and recycling for participating house-
holds and small businesses. ABC employees driving company
trucks have on occasion caused damage to the trucks and to
personal property of third parties.

In an effort to promote safety and to decrease careless driv-
ing, ABC in recent years established a policy whereby drivers
determined to be at fault are given an option of either accepting
disciplinary action or entering into an agreement to set off the
damages against their wages.[6] The determination of fault is

---

[3]General Laws c. 149, § 148 (§ 148) and § 150 (§ 150), are referred to
collectively in this opinion as the Wage Act.

[4]We acknowledge the amicus brief of the Massachusetts Employment
Lawyers Association, the Greater Boston Legal Services, the Brazilian Women's
Group, Centro Presente, the Chelsea Collaborative, The Chinese Progressive
Association, the Massachusetts Coalition for Occupational Safety and Health,
the Massachusetts Immigrant and Refugee Advocacy Coalition, the Mas-
sachusetts Jobs with Justice, Metrowest Worker Center, Project Voice, and the
American Friends Service Committee, in support of the Attorney General.

[5]The parties filed with DALA a statement of agreed facts in connection
with their cross motions for summary decision. The administrative magistrate
adopted these facts as findings.

[6]On hiring, employees are informed in writing of the "accident reporting

made after the ABC safety officer reviews records related to the incident and reports his findings to the safety manager. If the safety manager, in consultation with ABC management, determines the incident was a "preventable accident," see note 6, *supra*, she offers the driver a choice of making payment for the damages or accepting discipline. The findings of the safety manager as to whether an accident was preventable and the amount of damages are final and not subject to any appeal process. A driver determined by ABC to be at fault may enter into a written agreement with ABC for the payment of the cost of the damage by way of a setoff against wages due to the employee. Some drivers have chosen to accept disciplinary action instead of paying damages. Of those employees who have agreed to permit a setoff by ABC, the average setoff is fifteen dollars to thirty dollars per week. In no instance has a driver's pay, net of setoffs for driver fault, fallen below minimum wage standards. Between 2003 and 2006, ABC's costs attributable to damage done to vehicles and personal property has been reduced by seventy-eight per cent. ABC attributes this reduction to implementation of this policy.

The fair labor standards division of the Attorney General's office conducted an audit of the deductions made by ABC from June, 2004, through March, 2006. The audit revealed that ABC deducted $21,487.96 from the wages of twenty-seven employees during this time period in accordance with the policy at issue. In February, 2007, the Attorney General issued a civil citation against Camara and ABC for an intentional violation of G. L. c. 149, § 148; the citation required payment of $21,487.96 in restitution and assessed a $9,410 civil penalty. On the plaintiff's timely appeal, an administrative magistrate within DALA issued a decision upholding the Attorney General's citation.

The plaintiff sought review of the DALA decision in the Superior Court pursuant to G. L. c. 30A, § 14. After a hearing,

procedures," which essentially memorialize the terms of the policy at issue. The procedures provide that the company can impose disciplinary action on an employee who causes a preventable accident, and that an employee who has caused a preventable accident may opt to pay for the damage, or to receive a suspension and ninety days' probation; depending on the severity of the accident, termination of employment is also a possible outcome. The parties' joint statement of agreed facts uses the terms "preventable accident" and "at fault" essentially interchangeably.

a Superior Court judge (motion judge) granted the plaintiff's motion for judgment on the pleadings, reversing the DALA decision and invalidating the Attorney General's citation. The Attorney General appealed to the Appeals Court, and we transferred her appeal to this court on our own motion.

*Discussion.* In the Superior Court, ABC challenged DALA's decision as being based on an error of law. See G. L. c. 30A, § 14 (7) (*c*). We grant de novo review of questions of law in administrative decisions. *Electronic Data Sys. Corp.* v. *Attorney Gen.*, 454 Mass. 63, 65 (2009) (*Electronic Data*), citing *Belhumeur* v. *Labor Relations Comm'n*, 432 Mass. 458, 463 (2000), cert. denied, 532 U.S. 904 (2001). However, the Attorney General's reasonable interpretation of the Wage Act is entitled to deference. See *Electronic Data, supra* at 69, quoting *Smith* v. *Winter Place LLC*, 447 Mass. 363, 367-368 (2006) ("Insofar as the Attorney General's office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference, at least where it is not inconsistent with the plain language of the statutory provisions").

Section 148 of the Wage Act requires prompt and full payment of wages due. It provides in pertinent part:

> "Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week . . . . No person shall by a *special contract* with an employee or by any other means exempt himself from this section or from section one hundred and fifty . . ." (emphasis added).

G. L. c. 149, § 148. General Laws c. 149, § 150 (§ 150), in turn, authorizes the Attorney General to "make complaint" against any employer who violates § 148 and limits employers' defenses as follows:

> "On the trial no defence for failure to pay as required, other than the attachment of such wages by trustee process or a valid assignment thereof or a *valid set-off* against the same, or the absence of the employee from his regular

place of labor at the time of payment, or an actual tender
to such employee at the time of payment of the wages so
earned by him, shall be valid" (emphasis added).

G. L. c. 149, § 150.

The Attorney General interprets the "special contract" language
in § 148 as generally prohibiting an employer from deducting, or
withholding payment of, *any* earned wages. She argues that this
prohibition cannot be overcome by an employee's assent, both
because § 148 makes the "special contract" prohibition uncondi-
tional and for reasons of public policy. In her view, regardless of
an employee's agreement, there can be no deduction of wages
unless the employer can demonstrate, in relation to that employee,
the existence of a valid attachment, assignment or setoff as
described in § 150,[7] a condition she claims that the ABC setoff
policy does not meet.

We find the Attorney General's interpretation of § 148 to be
a reasonable one. It is consistent with the statute's purpose,
which is "to protect employees and their right to wages."
*Electronic Data*, 454 Mass. at 70. See *Boston Police Patrolmen's
Ass'n* v. *Boston*, 435 Mass. 718, 720 (2002) ("purpose of the
weekly wage law is clear: to prevent the unreasonable detention
of wages"). Here, instead of receiving, for example, $400 a
week in net pay, an ABC employee would take home only $370
to $385 pursuant to an agreement that applies only to that
employee.[8] Given the undisputed manner in which the ABC
policy operates, we agree with the Attorney General that even if
the arrangement is voluntary and assented to,[9] it still represents

---

[7]The term setoff is not defined in G. L. c. 149, § 150. A setoff is generally
defined as "something that is set off against another thing[;] . . . the discharge
of a debt by setting against it a distinct claim in favor of the debtor." Web-
ster's Third New International Dictionary 2078 (1993).

[8]The record does not contain information concerning the average weekly
wages of ABC employees who drive its trucks. The $400 figure used as an
example in the text is a hypothetical one, used for illustrative purposes. The
reduction by fifteen to thirty dollars per week, however, is based on the par-
ties' statement of agreed facts.

[9]The Attorney General represents in her brief that the audit of ABC performed
by the fair labor standards division in her office followed the division's
receipt of a number of complaints by employees of ABC that the company
had made improper deductions from their pay. The plaintiff does not address
the point in its brief. Complaints of this nature would appear to call into ques-
tion the nature of the assent of at least some employees.

a "special contract," in the sense that it contains "peculiar provisions that are not ordinarily found in contracts relating to the same subject matter." Black's Law Dictionary 373 (9th ed. 2009).[10] This interpretation of the term, as the Attorney General contends, clearly furthers the Wage Act's overarching policy of protecting employees' rights to wages. Cf. *DiFiore v. American Airlines, Inc.*, 454 Mass. 486, 497 (2009) (interpreting term "service charge" in G. L. c. 149, § 152A [section of Wage Act protecting tips], to protect wage earners from risk that employers may seek to use special contracts to avoid compliance with statute).

The plaintiff disputes this interpretation of § 148. It claims, and the motion judge agreed, that it has not violated the section's special contract prohibition because all wages were properly credited to each affected employee, and the deductions conferred an "immediate benefit" in the form of reduced liability for him or her. Relying on *Buhl v. Viera*, 328 Mass. 201, 202 (1952), it contends that because an employee is liable to an employer for loss resulting from the employee's own negligence, and because ABC's employees have voluntarily agreed to make repayments for actual amounts expended by way of a deduction, those employees have not given up statutory rights to earned wages.

This argument lacks merit. As noted above, and as the plaintiff acknowledges, the affected employees have in fact received lower pay under ABC's policy, directly as a consequence of the policy's provisions that apply only to certain employees and only in certain circumstances. This arrangement fits squarely within the concept of a special contract, regardless whether the affected employees receive any "immediate benefit" from it. The possible existence of such a benefit is relevant only to whether the reduction in pay represents "a valid set-off" deduction under § 150. We turn to that question.

The Attorney General interprets the valid set-off defense in § 150 as strictly limited in scope and not applicable to ABC's policy. Valid setoffs enumerated in § 150, she states, all implicitly

---

[10]The term "special contract" is not defined in the Wage Act. We give statutory language an effect consistent with its plain meaning and in light of the legislative purpose unless to do so would achieve an illogical result. *Sullivan v. Brookline*, 435 Mass. 353, 360 (2001), and cases cited. See *Boston Professional Hockey Ass'n v. Commissioner of Revenue*, 443 Mass. 276, 287 (2005) (ordinary meaning may be understood from dictionary definition).

involve some form of due process through the court system, or occur at an employee's direction and in the employee's interests. ABC's deductions therefore do not qualify: ABC has not shown that any of the employees are legally liable for damages, or that, with respect to third parties, ABC was legally required to make payments on an employee's behalf by a judgment that "could not have been avoided." See *Buhl* v. *Viera*, 328 Mass. at 202-203, quoting *Keljikian* v. *Star Brewing Co.*, 303 Mass. 53, 54 (1939).

The plaintiff argues that its wage adjustments represent valid set-off deductions within the meaning of § 150. It views recouping costs from an employee who caused damage in an accident in which the employee was at fault as analogous to a setoff to correct an employee's misappropriation of an employer's funds, an arrangement the plaintiff contends has been found permissible because it merely returns to the employer funds that "as a matter of law the employee would owe." See *Mayhue's Super Liquor Stores, Inc.* v. *Hodgson*, 464 F.2d 1196, 1198 (5th Cir. 1972), cert. denied, 409 U.S. 1108 (1973).[11] See *Brennan* v. *Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1369 (5th Cir.

---

[11]The court in *Mayhue's Super Liquor Stores, Inc.* v. *Hodgson*, 464 F.2d 1196, 1198 (5th Cir. 1972), cert. denied, 409 U.S. 1108 (1973), stated, as the plaintiff argues, that if an agreement between an employer and an employee required the repayment of moneys "that the employee himself took or misappropriated," the agreement would not run afoul of the Federal Fair Labor Standards Act (FLSA) — the Federal minimum wage law — 29 U.S.C. §§ 201 et seq., because "[a]s a matter of law the employee would owe such amounts to the employer, and as a matter of fact, the repayment of moneys taken in excess of the money paid to the employee in wages would not reduce the amount of his wages." However, the court actually held in that case that Mayhue's, the employer, was in violation of the FLSA and implementing regulations because the agreement required the employer's cashiers to "voluntarily repay" missing funds that represented cash shortages "occur[ring] through misappropriation, theft, *or otherwise*" (emphasis added), *id.*, and there was no evidence that the cash shortages in question "were the result of theft on the part of the cashiers or were in any way different from the usual losses which are to be expected where cashier employees handle a large number of transactions. . . . [T]his agreement tended to shift part of the employer's business expense to the employees and was illegal to the extent that it reduced an employee's wage below the statutory minimum." *Id.* at 1198-1199. The plaintiff's policy at issue, providing as it does for a setoff against ABC's employees' wages based on an entirely unilateral and untested judgment by the employer of fault and amount of damage, seems more similar to the proscribed voluntary repayment program used by Mayhue's than to a plan for

1973).[12] The plaintiff asserts that in this case, ABC performed thorough investigations and made findings of fault before entering into set-off agreements with employees; as such, the debts were "clear and established." See *Somers* v. *Converged Access, Inc.*, 454 Mass. 582, 593 (2009) (*Somers*).

We disagree. We wrote in *Somers* that "we understand the term ["valid set-off" in § 150] . . . to refer to circumstances where there exists a clear and established debt owed to the employer by the employee." *Id*. Contrary to the plaintiff's characterization, *Somers* rejected a theory of damages that was not expressly in the statute and ran counter to the legislative purpose of protecting employees' interests. *Id*. at 592-593. An arrangement whereby ABC serves as the sole arbiter, making a unilateral assessment of liability as well as amount of damages with no role for an independent decision maker, much less a court, and, apparently, not even an opportunity for an employee to challenge the result within the company, does not amount to "a clear and established debt owed to the employer by the employee." See *id*. at 593.[13] The option afforded ABC's employees to choose

the recovery of admittedly misappropriated funds; like the latter program, the plaintiff's policy shifts to the ABC employees some of what appear to be the ordinary costs of doing business as a trash-pickup enterprise.

[12]The plaintiff argues that in reversing DALA, the motion judge properly relied on *Brennan* v. *Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1369 (5th Cir. 1973) (*Brennan*), a case where the court found an employer subject to the minimum wage requirements of the FLSA could make set-off deductions from an employee's wages to cover wage advances made by the employer to the employee as well as to recoup the employer's reimbursements to "third-party creditors of the employee at the employee's direction and with his consent." *Id*. The *Brennan* case is plainly distinguishable from this case. The employee in *Brennan* became intoxicated, took one of his employer's trucks, caused a motor vehicle accident in which he destroyed the truck as well as the other driver's car, was criminally charged for his conduct and required to pay criminal fines that his employer paid for him; the employer also paid the third party for the destroyed car. See *id*. at 1368 & n.4. Pursuant to the plaintiff's policy, ABC's employees, acting within the scope of their employer's business, without any independent determination of negligence, have wages deducted for conduct that is not alleged to be intentional or reckless, much less criminal, and deducted for the purpose of paying their employer for the cost of repairing its own vehicles. In *Brennan*, the court concluded that the employer violated the FLSA insofar as it undertook to recoup, through set-off deductions from the employee's wages, the cost of replacing the employer's own truck that had been destroyed by the employee in the driving spree. *Id*. at 1369-1370.

[13]The Attorney General offers the following as examples of the defenses

"voluntarily" to accept either wage deductions or discipline of-fers them only unpalatable choices. This procedure does not come close to providing an employee the protections granted a defendant in a formal negligence action. Contrast *Buhl* v. *Viera*, 328 Mass. at 202-204.[14]

*Conclusion.* The statutory language and the interplay of §§ 148 and 150 of the Wage Act reflect that employee deduc-tion agreements of the type at issue in this case constitute special contracts that § 148 prohibits unless the deductions are valid setoffs for clear and established debts within the meaning of § 150. For the reasons we have discussed, we do not find the deductions prescribed by the plaintiff's policy to be setoffs for clear and established debts. Accordingly, we agree

available to employers under the category of "valid set-off": where there is proof of an undisputed loan or wage advance from the employer to the employee; a theft of the employer's property by the employee, as established in an "independent and unbiased proceeding" with due process protections for the employee; or where the employer has obtained a judgment against the employee for the value of the employer's property. We do not understand the Attorney General to be arguing that these are the *only* types of setoffs that are permis-sible under § 150; if that is her point, we do not agree with it. There well may be other circumstances — for example as part of a collective bargaining agreement — in which an employer and employee enter into a set-off arrange-ment that does not involve formal judicial or administrative proceedings but that would be valid because it can be shown that the parties have voluntarily agreed to a set of appropriately independent procedures for determining, in a manner that adequately protects the employee's interests, both the existence and amount of the debt or obligation owed by the employee to the employer.

[14]As previously noted, the plaintiff relies on *Buhl* v. *Viera*, 328 Mass. 201 (1952), to assert that an employee may be held liable to an employer for a loss resulting from the employee's negligence with respect to third parties. See *id.* at 202. We take no issue with the proposition that employees may be liable to employers in tort for damages caused to third parties. See *Richmond* v. *Schuster Express, Inc.*, 16 Mass. App. Ct. 989, 990 (1983) (employer liable on theory of respondeat superior may compel indemnification for judgment from responsible employee). In the *Buhl* case, however, the employer's li-ability derived from a jury verdict. *Buhl* v. *Viera, supra* at 202. The employee had actual notice of a complaint brought by a third party and an opportunity to take part in the defense at trial; the employer subsequently brought a civil complaint against the employee for indemnification. *Id.* at 202-204. The *Buhl* case stands for the proposition that an employee may be liable to an employer for damages from the employee's negligent conduct, but it does not support the proposition that such liability may exist solely by virtue of an employer's pronouncement, without any need for independent determination or adjudication.

with the Attorney General that the plaintiff violated § 148. We vacate the judgment and order of the Superior Court and remand for entry of judgment affirming DALA's decision upholding the Attorney General's citation.

*So ordered.*