Sanders, Janet L., J.
This is a putative class action against Right At Home, Inc. (RAH), Kenney Enterprises, *347 LLC d/b/a Right At Home (KELLC), and four individuals. The defendants operate home healthcare agencies that employ hourly-paid home healthcare aides providing in-home care to elderly and infirm clients. Plaintiffs Jessica Garcia and Carlix Luciano were two of these home healthcare aides. The First Amended Class Action Complaint (the Complaint) alleges that the defendants failed to pay the plaintiffs and others similarly situated for intra-day travel time between client locations, and also failed to fully reimburse them for their transportation expenses. Plaintiffs assert both statutory and common-law violations. The case is now before the Court on separate Motions to Dismiss brought by: (1) RAH; (2) defendants Brian Petranick and Allen Hager; and (3) defendants KELLC, Jay Kenney, and Rosaleen Doherty. For the reasons set forth below, Petranick’s and Hager’s Motion is Attowed and the Motions brought by KELLC, Kenney, Doherty, and RAH are Denied.
BACKGROUND
The Complaint alleges the following.
RAH, a Nebraska corporation, is a worldwide provider of in-home care and assistance. The president of RAH is Petranick, and Hager is its CEO. KELLC is a Massachusetts limited liability company that operates RAH franchises in Massachusetts. Kenney and Doherty are managers of KELLC. RAH and KELLC do business under the same name (Right At Home), provide the same services, utilize the same website, and employ the same policies. RAH provides extensive and uniform instruction to KELLC with regard to all aspects of its operations, including hiring, invoicing, payroll, and administration. RAH also controls KELLC’s employment policies and practices, including its travel time and travel expense policies.
Garcia and Luciano began their employment with KELLC as home healthcare aides in December 2010 and September 2013, respectively. In that position, they provided in-home personal care, companionship, and housekeeping help to elderly or infirm clients. Each week, Garcia and Luciano were assigned to travel to multiple clients’ homes on specified days and times to perform these services. These appointments were often scheduled back-to-back, requiring them to drive directly from one appointment to the other. The plaintiffs traveled to each client in their personal vehicles and generally had only 15 to 30 minutes to travel between appointments. At times, Luciano worked in excess of forty hours a week.
KELLC paid Garcia and Luciano solely for the time they spent with clients. It did not pay for travel time between appointments, nor did KELLC reimburse them for all travel expenses. All home healthcare aides working for KELLC were subject to these same travel time and travel expense practices.
DISCUSSION
The Complaint asserts six claims that roughly fall into two categories. The first set of claims, Counts I through III and VI, are brought under the Massachusetts wage and hour statutes. The second set of counts, Counts IV and V, are common-law claims. All defendants move to dismiss the Complaint pursuant to Mass.RCiv.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants Petranick and Hager separately move to dismiss under Mass.RCiv.P. 12(b)(2). This Court addresses that argument first.
A. Personal Jurisdiction
Personal jurisdiction may be asserted only as permitted by the Massachusetts longarm statute, G.L.c. 223A, provided that the exercise of jurisdiction is consistent with basic due process. See Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). Because the Supreme Judicial Court construes G.L.c. 223A to permit jurisdiction to the limits allowed by the Constitution, this Court turns directly to the constitutional issue to determine if jurisdiction may be properly asserted. To satisfy constitutional requirements, the defendant must have certain minimum contacts with the Commonwealth. Tatro v. Manor Care, Inc., 416 Mass. 763, 772 (1994). That means that the plaintiff must demonstrate that; (1) her claim arises from or relates to the defendant’s activities within Massachusetts; (2) the defendant, through his in-state contacts, purposely availed himself of the privilege of conducting activities in the state; and (3) jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. Id. at 772-73; see also Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995). Here, plaintiffs cannot satisfy that first component of the due process analysis as to defendants Petranick and Hager—namely, that plaintiffs’ claims arise from those two defendants’ individual contacts with Massachusetts.
The affidavits submitted by Petranick and Hager show that they live and work in Nebraska and have had little or no personal contact with Massachusetts, much less have had any direct dealings with plaintiffs. Plaintiffs offer no evidence to the contrary. Instead, plaintiffs rely on those two individuals’ relationship with KELLC and RAH, over which this Court concededly has personal jurisdiction. That Petranick and Hager controlled and/or managed RAH or that RAH is closely integrated with KELLC is not enough for jurisdictional purposes, however. Yankee Group, Inc. v. Yamashita, 678 F.Sup. 20, 23 (D.Mass. 1988) (“Where a corporate officer has no contacts with the forum state, jurisdiction may not be asserted merely because of the position which the defendant holds with the corporation”). As the Appeals Court has held, a plaintiff must do more than show that its claims “arose out of the general relationship between the parties” in order to show contacts with this state sufficient to support the assertion of jurisdiction. Fern v. Immergut, 55 Mass.App.Ct. 577, 584 (2002), quoting Sawtelle, 70 F.3d at 1389. “(T]he action must directly arise out of the specific contacts between the defendants and the forum state.” Id., quoting Sawtelle, 70 F.3d at 1389 (emphasis in original).
*348 Plaintiffs contend that the Court has personal jurisdiction by virtue of the fact that the Massachusetts wage and hour laws impose individual liability on certain company officers. Liability and jurisdiction are independent concepts, however. “Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant’s relationship with the forum.” Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990). That Petranick and Hager could be liable for wage violations does not mean that they can be hauled into a Massachusetts court.
B. Failure to State a Claim
The remaining defendants move to dismiss pursuant to Mass.R.Civ.P 12(b)(6). They raise many arguments, some of them briefed only in summary fashion. A few are difficult to resolve and are better handled in any event once discovery has been completed, particularly since a ruling in the defendants’ favor would not narrow the case in any appreciable manner. With that in mind, this Court concludes that the Complaint does state a claim upon which relief may be granted.
1. Wage and Hour Law Claims
Counts I and II allege that the defendants’ failure to pay for their travel time and travel expenses violated the Wage Act, G.L.c. 149, §148, and the Minimum Wage Law, G.L.c. 151, §1. Count III alleges that the defendants’ failure to pay Luciano for travel time in the weeks she worked in excess of forty hours violated the Overtime Law, G.L.c. 151, §1A. All three claims rely on 454C.M.R. §27.04(4)(d), a Department of Labor Standards regulation, which the defendants contend is either inapplicable or invalid. Count VI alleges that the failure to pay plaintiffs for travel time resulted in a violation of the record keeping requirements under G.L.c. 149, §148 and G.L.c. 151, §15. Defendants argue that Count VI must be dismissed because the wage and hour laws provide no private right of action for record keeping violations and because the plaintiffs were not “aggrieved” by the alleged violation.[1] Finally, RAH separately contends that the plaintiffs cannot bring any of these claims against it because the Complaint does not establish that it was the plaintiffs’ employer for purposes of the wage and hour laws. This Court is not persuaded by any of these arguments.
As to RAH, the Complaint provides sufficient allegations to suggest that RAH was a “joint employer” with KELLC and therefore potentially liable under the wage and hour laws. There are no Massachusetts appellate court decisions establishing the test for joint employment in the wage and hour context. However, Massachusetts courts look to cases interpreting the federal Fair Labor Standards Act (FSLA) for guidance. See Goodrow v. Lane Bryant, Inc., 432 Mass. 165, 170 (2000). When applying the FSLA, courts utilize the “economic realities” test to determine whether an entity is a joint employer. Under that test, a company is an employer if it: “(1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.” Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998). Here, the Complaint alleges that RAH and KELLC do business under the same name, provide the same services, utilize the same website, and employ the same policies. The Complaint also alleges that RAH provides extensive and uniform instruction to KELLC with regard to all aspects of its operations (e.g., hiring, invoicing, payroll, and administration), and that RAH otherwise controls KELLC’s employment policies and practices, including the travel time and travel expense policies at issue. From these factual allegations, it is reasonable to infer that RAH and KELLC are so integrated with one another that RAH is properly considered a joint employer under the “economic realities” test.
As to 454 C.M.R. §27.04(4)(d)—the foundation for Counts I through III—that regulation provides that: “[a]n employee required or directed to travel from one place to another after the beginning of or before the close of the work day shall be compensated for all travel time and shall be reimbursed for all transportation expenses.” Reading the phrase “after the beginning of the work day” to refer to when the instruction to travel is given, the defendants maintain that the regulation requires only that employers pay employees for unanticipated travel arising during work hours, i.e., when there is a new directive issued by the employer after the beginning or before the close of a workday. Here, plaintiffs were generally aware of their schedule, including travel time, before the start of each working day. This Court is not convinced that the regulation should be read as narrowly as defendants suggest, however.
Words like “unanticipated” appear nowhere in 454 C.M.R. §27.04(4)(d). Nor does the regulation specify that it is meant to apply only to travel made pursuant to “a new directive” from the employer. Read in a common sense fashion, this Court concludes that the phrase “after the beginning of the work day” refers to when the travel takes place, not when the instruction is given. This reading is consistent with opinion letters issued by the Department of Labor Standards (DLS), see, e.g., DLS Opinion Letter MW-2002-012 (Apr. 17, 2002), and is also consistent with the public policy objectives undergirding the wage and hour laws.
The defendants also contend that, to the extent Section 27.04(4) (d) requires travel expense reimbursement, the regulation is invalid. Because expense reimbursements are not wages, they argue, they are not subject to regulation under either the Wage Act or the Minimum Wage Law. The Appeals Court has noted, however, that Section 148 of the Wage Act prohibits wage reductions achieved by “any other means,” thus preventing an employer from effectively reducing wages by shifting ordinary business costs to the employee. Fraelick v. Perkett PR, Inc., 83 Mass.App.Ct. 698, 706-08 (2013); see also Camara v. Attorney Gen., 458 Mass. 756, 763-64 & *349 n.ll (2011). Section 27.04(4)(d) prevents a wage reduction achieved by “any other means” in that it prohibits employers from shifting the costs of travel related business expenses to employees. The regulation is thus consistent with the Wage Act.
For similar reasons, the regulation is also consistent with the Minimum Wage Law, the specific statute under which the regulation was promulgated. The purpose of that statute is to prevent employers from implementing an “oppressive and unreasonable wage,” a term defined as “a wage which is both less than the fair and reasonable value of the services rendered and less than sufficient to meet the minimum cost of living necessary for health.” G.L.c. 151, §1; see also Metro Equip. Corp. v. Commonwealth, 74 Mass.App.Ct. 63, 69 (2009). The regulation serves this purpose by ensuring that employees’ wages are not reduced below the statutory minimum as a result of travel expenses incurred in the performance of their duties. See Camara, 458 Mass. at 763 n.11. Accordingly, the plaintiffs properly relied on 454 C.M.R. §27.04(4) (d) as a basis for Counts I through III.
As to Count VI, defendants first argue that the wage and hour laws donotprovide aprivate right of action for arecord keeping violation and that it is only the Attorney General who may enforce such violations. This Court disagrees. Massachusetts General Laws c. 149, §150 provides that:
[a]n employee claiming to be aggrieved by a violation of sections . . . 148 [of Chapter 149] ... or section 19 of chapter 151 may, 90 days after the filing of a complaint with the attorney general, or sooner if the attorney general assents in writing, and within 3 years after the violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits.
The plaintiffs bring their claims under the statutes referenced by this provision—namely, G.L.c. 149 and 151—and are thus permitted to institute a private action. Although the Complaint does not allege that the plaintiffs first filed an administrative complaint with the Attorney General, that is not necessary for the Court to have jurisdiction to hear a claim brought under either GL. c. 149 or c. 151. See Depianti v. Jan-Pro Franchising International, Inc., 465 Mass. 607, 611-14 (2013). So long as the Attorney General is notified of the suit during its pendency, the statutory purposes of Section 150 will have been ful filled. Id. at 614. In their opposition papers, plaintiffs maintain that they have sought permission to sue from the Attorney General. If this is not the case, the Court can address the continued viability of the claim at a later time.
Finally, the defendants contend that the plaintiffs are not “aggrieved” by virtue of not receiving accurate pay slips. An aggrieved person is broadly defined, however, to include anyone who has suffered some infringement of legal rights. Cf. Marashlian v. Zoning Bd. of Appeals, 421 Mass. 719, 721 (1996) (under G.L.c. 40A, §17 “person aggrieved” means person who “suffers some infringement of his legal rights”). These plaintiffs are aggrieved persons within that broad definition. Any question as to the damages they sustained is left to another day
2. Common-Law Claims
Plaintiffs’ common-law counts consist of a claim for breach of contract (Count IV) and a count alleging unjust enrichment (Count V). As to the breach of contract claim, defendants assert that this is essentially a Wage Act violation dressed up as a common-law claim, and should therefore be dismissed. There is nothing that prevents the plaintiffs from asserting the common-law claim in addition to a statutory one, however. Lipsitt v. Plaud, 466 Mass. 240, 252 (2013). As to the unjust enrichment claim, defendants maintain that plaintiffs have an adequate remedy at law, thus precluding this equitable remedy. See Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005). But it remains unclear whether plaintiffs will indeed be successful in showing a statutory violation, thus entitling them to seek alternative remedies at this early stage in the case.
Defendants assert more generally that the Complaint’s allegations are insufficient as to the elements for either breach of contract or unjust enrichment. Reading the complaint generously, this Court disagrees. RAH, in particular, argues that the breach of contract claim against it must be dismissed because there is no allegation that it was a party to the plaintiffs’ employment agreement. However, the Complaint’s allegations suggest that RAH completely controlled KELLC’s activities and essentially dictated its policies. The SJC has stated that— at least in the context of a franchisor/franchisee relationship—there may be a basis to hold one entity vicariously liable for the conduct of another, even though it has no contractual relationship with the plaintiff. Depianti, 465 Mass, at 617 (franchisor is “vicariously liable for the conduct of its franchisee where it controls or has a right to control the specific policy or practice resulting in harm to the plaintiff’). Whether this is true in the instant case is best decided after discovery, based on a fully developed record.
CONCLUSION AND ORDER
For the forgoing reasons, Petranick and Hager’s Motion to Dismiss is ALLOWED so that all claims against them are DISMISSED and they are no longer parties to this case. The Motions to Dismiss brought by Kenney Enterprises, LLC, Kenney, Doherty, and Right At Home, Inc. are DENIED.

 The defendants also argue that Garcia’s claims are time barred, citing to allegations in the Complaint that she began her employment with KELLC in December 2010, which is outside the three-year statute of limitations. It can be reasonably inferred from the Complaint, however, that Garcia’s work continued after December 2010 and that she did not receive payment for travel time or travel expenses within the limitations period. Her claim is therefore not time-barred.