SAMANTHA SMITH & others[1] *vs.* WINTER PLACE LLC[2]
& others.[3]

Suffolk. April 3, 2006. - August 1, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Statute,* Construction. *Administrative Law,* Agency, Agency's interpretation of statute. *Labor,* Wages. *Employment,* Retaliation. *Attorney General.*

This court concluded that G. L. c. 149, § 48, prohibits employers from retaliating against employees who complain to the management of the employer with a reasonable belief that the wages they have been paid violate the laws governing wages and hours, and that the statute's protective reach is not limited to those employees who make an official complaint to a person involved in the civil or criminal enforcement of those laws. [366-368]

A maitre d' who merely conveyed to higher management complaints of the servers at the restaurant at which the maitre d' and the servers were employed was not asserting the servers' rights or complaining on their behalf, and therefore, the maitre d' could not claim that his subsequent firing constituted retaliation prohibited under G. L. c. 149, § 48. [368-369]

CIVIL ACTION commenced in the Superior Court Department on March 7, 2002.

A motion for summary judgment was heard by *Nancy Staffier Holtz*, J., and a question of law was reported to the Appeals Court by *Ralph D. Gants*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Shannon Liss-Riordan* for the plaintiffs.

*Gordon P. Katz* for the defendants.

The following submitted briefs for amici curiae:

*John E. Coyne & Kevin P. Sweeney* for Massachusetts Restaurant Association.

---

[1] Charles Kimball, Pierre Sosnitsky, and the administratrix of the estate of Bruce Porter.

[2] Doing business as Locke-Ober Company.

[3] Paul Licari and Lydia Shire, owners of the Locke-Ober Company.

*Ingrid Nava, Audrey R. Richardson, Patti A. Prunhuber, & Donald J. Siegel* for Greater Boston Legal Services & others.

*Julia J. Carabillo & Andrea C. Kramer* for The Women's Bar Association of Massachusetts.

CORDY, J. Samantha Smith, Bruce Porter, and Charles Kimball were servers at the landmark Boston restaurant Locke-Ober; Pierre Sosnitsky was the maitre d' and a manager. They contend that the defendants terminated their employment in violation of the retaliation provision of the Massachusetts wage laws, G. L. c. 149, § 148A, for complaining about what they perceived to be violations of the statute's tip pooling provision, G. L. c. 149, § 152A. A Superior Court judge granted the defendants' motion for summary judgment with respect to Kimball and Sosnitsky because their "complaints" about the alleged wage law violations were made only internally to management and not to the Attorney General's office. The judge denied the motion for summary judgment as to Smith and Porter because there was evidence that they had each complained to the Attorney General's office before being terminated.[4]

Subsequent to the ruling on the motion for summary judgment, another judge granted the plaintiffs' motion to report the central legal question in the case to the Appeals Court pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996). We granted the plaintiffs' application for direct appellate review.[5] The question now before us is: "Does G. L. c. 149, § 148A,

[4]The judge also granted summary judgment for the defendants on the plaintiff servers' claims that the defendants had violated G. L. c. 149, § 152A. That ruling has not been appealed, and the plaintiffs have now explicitly waived those claims.

In the context of a retaliation claim brought under our discrimination laws, G. L. c. 151B, § 4 (4), we have held that a claim for "[r]etaliation is a separate and independent cause of action" from a claim of discrimination. *Abramian* v. *President & Fellows of Harvard College,* 432 Mass. 107, 121 (2000). Its viability does not depend on the success of the underlying discrimination claim, so long as the plaintiff can prove that he "reasonably and in good faith believed the [employer] was engaged in wrongful discrimination," and that the "[employer's] desire to retaliate against [him] was a determinative factor in its decision to terminate [his] employment." *Id.,* quoting *Tate* v. *Department of Mental Health,* 419 Mass. 356, 364 (1995). We see no reason to interpret the retaliation provision of the wage laws differently.

[5]In granting the plaintiffs' application for direct appellate review, we stated that we would review "all issues addressed by the interlocutory order."

prohibit employers from retaliating against employees for making internal allegations of wage violations, even if those employees never brought their allegations to the attention of the Attorney General?"

For the reasons set forth below, we answer the question in the affirmative. Accordingly, we reverse the entry of summary judgment against Kimball, and affirm the denial of summary judgment against Smith and Porter. We also affirm summary judgment against Sosnitsky, insofar as his conduct, the mere passing on of the servers' complaints to the defendants, was not activity protected by the retaliation statute.[6]

1. *Background.* We recite the evidence in the summary judgment record, in its light most favorable to the plaintiffs. Locke-Ober reopened in November, 2001, under the ownership of the defendants Paul Licari and Lydia Shire. Sosnitsky was hired as the maitre d'. When the restaurant reopened, it instituted a tip pooling system. The system was proposed and designed by Sosnitsky, based on his experience working in another Boston restaurant. It required servers to share their tips with busboys, bartenders, and the maitre d' at each shift according to a point system.[7] The system met with immediate controversy; servers complained that they were not receiving all of their tips, and in particular, they complained that Sosnitsky should not be sharing in their tip pool. Based on the publicity that tip pooling had received in other contexts, and a pamphlet prepared and distributed by the Attorney General's office entitled Commonly Asked Questions about the Massachusetts Wage and Hour Laws, the servers believed that the policy adopted by the defendants violated the Massachusetts wage laws.[8]

Smith and Porter complained about the tip pooling system to

Insofar as the plaintiffs have waived their claims under G. L. c. 149, § 152A, we only consider the summary judgment decisions regarding the retaliation claims.

[6] We had solicited amicus briefs and acknowledge briefs filed by Greater Boston Legal Services, Western Massachusetts Legal Services, and the Massachusetts AFL-CIO; the Massachusetts Restaurant Association, and The Women's Bar Association of Massachusetts.

[7] Each position received a number of points and the tips were distributed to the servers, busboys, bartenders and the maitre d' in proportion to the number of points designated for his or her respective position.

[8] In the Attorney General's pamphlet, the following question was posed:

the Attorney General's office prior to their termination. All of the server plaintiffs complained about the tip system to Sosnitsky. Sosnitsky advised Licari that the servers were upset about the tip pooling system, were upset that a manager was receiving a portion of their tips, and believed that the tip system was illegal. Licari's response was that "we should just get rid of them." The servers were subsequently fired by Sosnitsky.[9] Shortly thereafter, Licari fired Sosnitsky. Sosnitsky claims that Licari was unhappy with him for bringing the servers' complaints to his attention and that he was fired as a result.[10]

2. *Discussion.* a. *The reported question.* General Laws c. 149, § 148A, provides:

"No employee shall be penalized by an employer in any way *as a result of any action on the part of an employee* to seek his or her rights under the wages and hours provisions of this chapter.

"Any employer who discharges or in any other manner discriminates against any employee *because such employee has made a complaint to the attorney general or any other person*, or assists the attorney general in any investigation under this chapter, or has instituted, or caused to be instituted any proceedings under or related to this chapter, or has testified or is about to testify in any such proceedings, shall have violated this section and shall be punished

"Can service employees be required to pool their tips?" The answer: "No. Under [G. L. c. 149, § 152A], it is illegal for an employer to require an employee in the service of food or beverage to pool, split or share their tips with management or other employees. . . ."

General Laws c. 149, § 152A, was amended in 2004. See St. 2004, c. 125, § 13. It now permits an employer to set up a tip pool for the purpose of tip sharing among "wait staff employee[s]," "service employee[s]," and "service bartender[s]," who have "no managerial responsibility." The amended statute does not apply to this case.

[9]The defendants contest the plaintiffs' evidence on this point and had presented evidence that each server was terminated for other reasons, such as absence from work, unsatisfactory performance, and disciplinary issues. As disputed issues of material facts, these are for the fact finder to resolve.

[10]The defendants assert that Sosnitsky was fired because of complaints from customers and the servers about his performance and because Licari wanted to change the organization of the dining room to eliminate the maitre d' position.

or shall be subject to civil citation or order as provided in [§] 27C" (emphasis added).

The plain language of the first paragraph of § 148A extends the protection of the statute to employees who are penalized for taking "any action" to seek their rights under the laws governing wages and hours. A complaint made to an employer (or a manager of the employer) by an employee who reasonably believes that the wages he or she has been paid violate such laws readily qualifies as such an "action." See, e.g., *Simon* v. *State Examiners of Electricians*, 395 Mass. 238, 242 (1985) ("starting point of our analysis is the language of the statute").

We decline the defendants' invitation to interpret the second paragraph as narrowing the statute's protective reach to those employees who make an official complaint to a person involved in the civil or criminal enforcement of the wage and hour laws. Statute 1998, c. 236, § 11, which added the second paragraph to G. L. c. 149, § 148A, is consistent with, and indeed expands the range of employees whose actions are protected in the first paragraph.[11] Of particular significance, it protects employees from retaliation for making a "complaint to the attorney general or any other person." While we need not decide whether the Legislature intended this provision to include complaints made to persons unrelated to either the business enterprise or the enforcement of the wage laws, it certainly includes complaints made to the management of the employer.

The Attorney General's office has also interpreted G. L. c. 149, § 148A, as amended, to protect both employees who make complaints to the Attorney General and those who take "any other action to seek statutory wage and hour rights." Advisory 2004/3, at 5, Attorney General's fair labor and business practices division. Insofar as the Attorney General's office

---

[11]For example, the category of "employee" protected from retaliation for making a complaint is not limited to an employee acting to "seek his or her rights." Also protected is any person who "assists the attorney general in any investigation," or has "testified" or is "about to testify" in proceedings brought under the statute. This would presumably include employees (and managers) whose own wages are not violative of the statute, and who have not filed a complaint with the Attorney General or anyone else, but are cooperating with the Attorney General's investigation or have agreed to testify in enforcement proceedings.

is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference, at least where it is not inconsistent with the plain language of the statutory provisions. See *Dahill* v. *Police Dep't of Boston*, 434 Mass. 233, 239 (2001) (State agency charged with enforcement of statute entitled to "substantial deference" in interpretation of statute through its issued guidelines).[12]

The defendants' interpretation of § 148A, in addition to being contrary to its plain language, would discourage employees from bringing complaints to their employers' attention directly and attempting informally and amicably to resolve disputes regarding the wage laws. Rather, it would encourage employees immediately to lodge official complaints with the Attorney General's office and begin adversary proceedings. It would also encourage employers to terminate employees as soon as they caught wind of any internal concerns about potential wage violations, so that they might obviate potential penalties and retaliation claims under provisions of G. L. c. 149, § 148A. Such outcomes would directly contravene the purpose of the statute, to encourage enforcement of the wage laws by protecting employees who complain about violations of the same.

b. *Summary judgment.* Having concluded that the complaints made by the plaintiff servers to Sosnitsky fall within the actions protected under § 148A, we reverse the grant of summary judgment as to Kimball, and affirm the denial of summary judgment as to Smith and Porter.[13] We decline, however, to conclude that the conduct of Sosnitsky, the maitre d', is covered by G. L. c. 149, § 148A.

The plain language of the first paragraph protects only ac-

[12]Prior to 1999, only the Attorney General could bring an action against an employer for violating the provisions of G. L. c. 149, § 148A. In 1999, the Legislature amended G. L. c. 149, § 150, adding § 148A to the list of sections that permit a private right of action for aggrieved employees. The present action is brought under G. L. c. 149, § 150.

[13]Summary judgment against Smith and Porter was denied in the Superior Court. They have joined in this appeal because, although there is evidence that they complained to the Attorney General's office, they contend that the internal complaints they made to management are central to their claims of retaliation.

tions taken by an employee "to seek his or her rights" and does not provide similar protection for actions undertaken by a third party on behalf of another employee. Although the language of the second paragraph expands the range of persons and conduct protected by the statute, and likely would protect an employee (or manager) from being punished for asserting the right of another employee or complaining to management on that employee's behalf, that is not this case. There is no evidence that Sosnitsky did either of these things, or took any other action protected under § 148A before his termination. See note 11, *supra.* The mere conveying of employee complaints by Sosnitsky to higher management (about a system Sosnitsky himself created and implemented) does not amount to asserting their rights, or complaining on their behalf. Cf. *Jackson* v. *Birmingham Bd. of Educ.,* 544 U.S. 167 (2004) (under Title IX of Education Amendments of 1972, public high school girls' basketball coach who complained that his team was not receiving equal funding and access to equipment and facilities and who was eventually fired could assert retaliation claim even though he was not victim of discrimination that was subject of his original complaints).

3. *Conclusion.* The answer to the reported question is, "Yes." The judgment is affirmed in part and reversed in part, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*