HEATHER FRAELICK *vs.* PERKETTPR, INC., & another.[1]

No. 11-P-1832.

Essex. June 4, 2012. - June 6, 2013.

Present: KATZMANN, BROWN, & SULLIVAN, JJ.

*Massachusetts Wage Act. Labor,* Wages. *Employment,* Retaliation. *Contract,* Employment, Misrepresentation, Interference with contractual relations. *Unlawful Interference. Declaratory Relief. Practice, Civil,* Dismissal.

Discussion of the Wage Act, G. L. c. 149, §§ 148 et seq., which commands every employer to pay an employee the wages earned by the employee at regular intervals and within a set number of days after the termination of the pay period during which the wages were earned; which prohibits exemption by means of a special contract; which prohibits retaliation against an employee for seeking his or her rights under the Wage Act; and which permits an aggrieved employee a private right of action to recover wages wrongfully withheld or detained by an employer. [703-705]

In a civil action brought by an employee (plaintiff) against her employer, alleging violation of the Wage Act, G. L. c. 149, §§ 148 et seq., the judge erred in dismissing the action for failure to state a claim on which relief could be granted, where, with regard to a claim that the plaintiff's employment was terminated in retaliation for her speaking out to senior management about the employer's failure to pay timely sums due under the plaintiff's contract, the complaint, fairly read, alleged that an otherwise permissible expense reimbursement arrangement designed to benefit employees had been abandoned and replaced with a policy and practice that required the employee, under penalty of discharge, to advance, indefinitely, expenses for the employer's benefit [705-708]; where a claim of tortious interference with contractual relations (brought against an individual defendant) required an assessment of state of mind and should be evaluated on the basis of a factual record [708]; where, with regard to a claim of misrepresentation, the complaint set forth questions (e.g., whether the plaintiff actually relied on promises made by the individual defendant and whether the plaintiff's reliance was reasonable) that could not be resolved on a motion to dismiss [708-709]; and where, likewise, with regard to the plaintiff's request for a judgment declaring that the noncompetition provision in her contract was unenforceable, the complaint set forth allegations sufficient to survive a motion to dismiss [709].

CIVIL ACTION commenced in the Superior Court Department on April 13, 2011.

[1] Christine Perkett.

A motion to dismiss was heard by *Robert A. Cornetta,* J.

*Joseph L. Sulman* for the plaintiff.

*William J. Royal, Jr.,* for the defendants.

BROWN, J. Just days after an at-will employee reiterated her displeasure to her employer at having long been denied a part of her compensation, she was fired.

A complaint, filed by the aggrieved employee (plaintiff), set out a series of interlinked facts, sufficiently detailed, which, when read together, suggested the corporate employer and its president had violated § 148A of the Massachusetts Wage Act, G. L. c. 149, §§ 148 et seq. (Wage Act), by terminating the plaintiff's employment in retaliation for her speaking out to senior management about the employer's failure to pay timely the sums due under her employment contract. In addition to the Wage Act claim, the plaintiff also sought compensatory relief, on common-law liability theories, and declaratory relief (see G. L. c. 231A), from a written noncompete agreement that she had signed, at the behest of the employer, as a condition of employment. Contesting the legal viability of the complaint, the defendants jointly filed a Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), motion. A judge of the Superior Court allowed the motion and dismissed the complaint in its entirety.

On appeal from the dismissal of her complaint by the judge, the plaintiff argues that her complaint alleges plausible entitlements to relief against PerkettPR, Inc. (PPR), and Christine Perkett, PPR's president (collectively, the defendants).[2] We conclude, for the reasons set forth herein, that the motion to dismiss was improvidently allowed.

A rule 12(b)(6) motion may be allowed only when the complaint's factual allegations (and reasonable inferences therefrom),

---

[2] The complaint was in eight counts: violation of the Wage Act, G. L. c. 149, § 148 (count 1); retaliation under the Wage Act, § 148A (count 2); breach of contract (count 3); misrepresentation (count 4); tortious interference with contractual relations against the individual defendant (count 5); tortious interference with advantageous relations (count 6); unjust enrichment (count 7); and declaratory relief as to the nonsolicitation agreement (count 8). The plaintiff abandoned her argument as to count 3 before the hearing on the motion to dismiss. She has appealed from only the dismissal of counts 2, 4, 5, and 8, and, accordingly, we consider only those claims. See *Smith* v. *Winter Place LLC,* 447 Mass. 363, 364 nn.4 & 5 (2006).

accepted as true, do not plausibly suggest an entitlement to relief. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 635-636 (2008); *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011). "Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Iannacchino* v. *Ford Motor Co.*, *supra* at 636, quoting from *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007). Assertions set out in a motion to dismiss are not part of the rule 12(b)(6) review equation. *Eigerman* v. *Putnam Invs., Inc.*, 450 Mass. 281, 285 n.6 (2007). *Romano* v. *Sacknoff*, 4 Mass. App. Ct. 862, 863 (1976).

We conclude, for the reasons set forth herein, that the complaint plausibly suggested an entitlement to remedial relief for violation of § 148A of the Wage Act, and declaratory relief as to a written noncompete agreement, which allegedly was unreasonably burdensome as to restrain unduly her right to secure gainful employment in her field of expertise (public relations). Claims for tortious interference and misrepresentation also were plausibly stated.

A. *Background.* 1. *Complaint.* The complaint alleges the following: PPR, a private corporation doing business in this Commonwealth, hired the plaintiff, Heather Fraelick, as a full-time senior account executive, on written terms and conditions, which PPR had offered and which Fraelick, in turn, accepted in June, 2007. PPR holds itself out as a "virtual" public relations firm, since it neither owns nor rents commercial space, a business model that PPR purportedly promotes as a benefit to its clients insofar as lower overhead costs are said to yield lower client fees. PPR required Fraelick to work at home as well as pay a wide variety of business-related overhead costs out of her own pocket before being reimbursed by PPR.

Specifically, memorialized by a written offer letter, PPR promised Fraelick an annual base salary of $60,000, plus other compensation and the benefit of the company's "paid expenses program." The agreed-to offer letter (or "contract"[3] such as it

---

[3]The plaintiff's counsel identifies PPR's offer letter as the "contract" between the parties, given its acceptance by the plaintiff. The plaintiff's

is alleged) expressly stated the employment was "on an at-will basis."

The company's paid expenses program called for PPR to reimburse fully an eligible employee, like Fraelick, for the business overhead costs incurred by her in performing her job, including but not limited to: telephone service fees,[4] laptop computer, basic office supplies, postage fees, and expenses associated with business travel undertaken on behalf of PPR.[5] Based on its written offer, Fraelick believed the expense program was a component of her agreed-to compensation package.

In December, 2009, PPR ceased to hold to its side of the bargain, by failing to compensate or reimburse Fraelick for costs that she had incurred in the course of her employment. On a number of occasions, throughout 2010, Fraelick took up this compensation issue with PPR's president, Christine Perkett, who at all times acknowledged the debt owed and unequivocally promised to pay all outstanding expenses as soon as possible.

Allegedly, in November, 2010, PPR paid Fraelick for some portion of the business expenses she had incurred some twelve months prior (in December, 2009). However, as late as December 31, 2010, PPR had not repaid Fraelick for overhead expenses

---

counsel quotes extensively from the contract and substantially relies on its written terms in stating the claims for relief, but ultimately did not attach the "contract" to the pleading. The defendants did so, appending a copy of the offer letter to their rule 12(b)(6) motion. The record, as it presently stands, does not indicate that the plaintiff sought to strike the offer letter. Rather, she, too, relied on it in her opposition to the motion to dismiss.

The parties' appellate briefs refer to the offer letter. Conversion of the defendants' rule 12(b)(6) motion to one for summary judgment was not required here because, as is apparent, the plaintiff "had notice of [the extrinsic] document[] and relied on [it] in framing the complaint." *Golchin* v. *Liberty Mut. Ins. Co.,* 460 Mass. 222, 224 (2011), quoting from *Marram* v. *Kobrick Offshore Fund, Ltd.,* 442 Mass. 43, 45 n.4 (2004), and citing Smith & Zobel, Rules Practice § 12.15, at 216 (2d ed. 2006). See *Beddall* v. *State St. Bank & Trust Co.,* 137 F.3d 12, 16-17 (1st Cir. 1998). The judge was right not to convert the defendants' motion to one for summary judgment. We refer to the contract and apply the rule 12(b)(6) standard of review.

[4]PPR agreed to reimburse one hundred percent of an employee's main business line and fifty percent of an employee's monthly cellular telephone charges.

[5]Certain of the overhead expenses listed in the offer letter were monthly expenses for which, inferably, Fraelick could expect to receive regular, recurring payments. These include "monthly Internet connection" and "furniture reimbursement — allocated over period of 12 months."

that she paid, on behalf of PPR, throughout calendar year 2010, in the regular course of performing her job and attending to PPR client matters. This was of considerable concern to Fraelick, and particularly so in January, 2011, when a PPR client asked that she attend an upcoming meeting or event in Atlanta, Georgia.

On February 3, 2011, Fraelick, once again, raised the matter of her unpaid expenses, directly with Perkett. The matter was weighing on Fraelick, both financially and otherwise. Some portion of her costs allegedly extended as far back as 2009. Fraelick expressed concerns that, due to financial hardship, she was then presently unable to travel to Georgia, or meet with other out-of-town clients, until PPR paid her what was due and owing.

Two days later, on February 5, PPR delivered a check to Fraelick for the monies owed — some $3,000, more or less — and, on February 8, PPR fired Fraelick, citing her "unwillingness" to continue paying for the firm's business expenses associated with her traveling to meet with PPR's clients, without receiving timely reimbursement. Contemporaneously with the termination of Fraelick's employment, PPR and Perkett directed a letter to Fraelick advising of the latter's "continuing" contractual obligations under the noncompetition agreement, including its unqualified ban on soliciting (or attempting to solicit) PPR's existing or prospective clients, for a period of one year from her separation from the company. PPR has clients nationwide and it seeks out business opportunities world-wide. Fraelick took seriously the implied threat of PPR to seek enforcement of its noncompete agreement, and the prospect of substantial costs in defending against such a claim. Fraelick claims to have suffered damages, including loss of future wages and benefits, and compensable emotional harm. This account is, essentially, the sum and substance of the factual allegations contained in the plaintiff's complaint, allegations we accept as true and from which we draw every reasonable inference in her favor.

2. *Motion to dismiss.* The plaintiff caused each defendant to be duly served and commenced an action in the Superior Court. Pursuant to rule 12(b)(6), the defendants moved to dismiss the complaint, arguing (among other contentions) that the plaintiff's allegations "do not rise to colorable claims on any of this scat-

tershot eight (8) count complaint." After a hearing, the judge allowed the defendants' motion, ruling: "[1] business expenses are not covered under the Massachusetts Wage Act" and [2] "plaintiff's claims fail to satisfy pleading standards set out under *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623 (2008)."

B. *The Wage Act.* It is common ground that the Wage Act, G. L. c. 149, §§ 148 et seq., lies at the heart of this case. It is useful to identify provisions of this long-standing statutory scheme, arguably implicated here, so as to frame the plaintiff's factual statement, in light of the well-settled public policies advanced by this comprehensive law.

1. *Payment of wages.* Section 148 of the Wage Act (§ 148) commands "[e]very" employer to pay an employee "the wages earned" by the employee at regular intervals and within a set number of days after "the termination of the pay period during which the wages were earned." § 148, first par., as amended through St. 1992, c. 133, § 502. See *Boston Police Patrolmen's Assn.* v. *Boston*, 435 Mass. 718, 720 (2002), citing *American Mut. Liab. Ins. Co.* v. *Commissioner of Labor & Indus.*, 340 Mass. 144, 147 (1959). The Wage Act does not define "wages" other than to provide they "shall include any holiday or vacation payments due an employee under an oral or written agreement." § 148, first par., inserted by St. 1966, c. 319.[6] Nor is "earn" defined, but it is commonly understood to mean "[t]o acquire by labor, service, or performance." *Awuah* v. *Coverall N. America, Inc.*, 460 Mass. 484, 492 (2011), quoting from Black's Law Dictionary 584 (9th ed. 2009).

For purposes of construing the Wage Act, when an employee has "completed the labor, service, or performance required of him [or her]," it necessarily follows that he or she has "earned" his or her due "wage." *Awuah* v. *Coverall N. America, Inc.*, *supra.*

2. *No exemption by means of a special contract.* Section 148

---

[6] "[S]o far as apt," if "the *amount of . . . commissions*, less allowable or authorized deductions, has been definitely determined and has become due and payable to [the] employee," such commissions "shall be subject to [§ 150 of the Wage Act]." § 148, fourth par., as appearing in St. 1956, c. 259. The plaintiff does not assert a claim for unpaid commissions, at least, on the face of her complaint.

of the Wage Act further provides, in relevant part: "No person shall by a special contract with an employee or by any other means exempt himself from this section." § 148, sixth par., as appearing in St. 1956, c. 259. The legislative intent, again, is to prevent the unlawful detention of wages, including, as alleged here, by agreement between the employer and employee.

3. *Antiretaliation.* Section 148A of the Wage Act (§ 148A), in no uncertain terms, commands that an employer shall not "penalize[]" an employee, in any way, due to or as a result of "any action" by the employee "to seek his or her rights" under the Wage Act. This is, in effect, a stiff antiretaliation law, which is strictly applied for the protection of employees who suffer adverse employment consequences for engaging in protected activity. "A complaint made to an employer (or a manager of the employer) by an employee who reasonably believes that the wages he or she has been paid violate such laws readily qualifies as such [a protected] action." *Smith* v. *Winter Place LLC,* 447 Mass. 363, 367 (2006).[7]

4. *Private right of action.* "The basic purpose of the [Wage A]ct is 'to prevent the unreasonable detention of wages.' " *Weems* v. *Citigroup Inc.,* 453 Mass. 147, 150 (2009), quoting from *Boston Police Patrolmen's Assn.* v. *Boston,* 435 Mass. at 720. An aggrieved employee has a private cause of action to

---

[7]It bears emphasis that an employee who, in good faith, makes an informal oral or written complaint to an employer, respecting a reasonably perceived unlawful practice by the employer, in failing to pay timely earned wages, advances a legislative policy to encourage private enforcement of the wage laws. See *Smith* v. *Winter Place LLC, supra* at 367-368. See also Miller, From *Conley* to *Twombly* to *Iqbal*: A Double Play on the Federal Rules of Civil Procedure, 60 Duke L.J. 1, 73-74 (2010), wherein an esteemed scholar and teacher of civil procedure observed, as to the importance of private enforcement of Federal statutes or common law:

> "[C]ases that . . . advance a statutorily authorized, private compensatory regime and those that are designed to have a regulatory effect by rectifying or stopping activity proscribed by a federal statute or federal common law . . . often represent a constitutional or congressional determination that private civil actions are necessary for one or more well-understood reasons — for example, securing deterrence; providing compensation for injured citizens; and addressing concerns that the relevant regulators lack sufficient resources, or may have come under the influence of those they are supposed to regulate, or have fallen into a period of inattention, desuetude, or worse."

recover "wages" wrongfully withheld or detained by the employer. G. L. c. 149, §§ 148 & 150.

Of clear import here, § 148 provides that the "president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section. . . . Whoever violates this section shall be punished . . . ." § 148, sixth par. § 148, ninth par., as appearing in St. 1998, c. 236, § 10. Here, at all events, Perkett had served as PPR's president, and thus, under the Wage Act, she is deemed, for purposes of this litigation, an "employer" of PPR's employees. See *Wiedmann* v. *The Bradford Group, Inc.,* 444 Mass. 698, 711 (2005) (under Wage Act's plain language, "individuals may be held liable"). And, in 1999, prior to the commencement of the present action, the Legislature created a private right of action for employees aggrieved by an employer's violation of § 148A, the antiretaliation law. See § 150 of the Wage Act (§ 150), second par., as amended by St. 1999, c. 127, § 145. See also *Smith* v. *Winter Place LLC,* 447 Mass. at 368 n.12.

After filing a written complaint with the Attorney General,[8] an employee may bring an action against her employer "for injunctive relief, for any damages incurred, and for any lost wages and other benefits. An employee so aggrieved who prevails in such an action shall be awarded treble damages . . . and shall also be awarded the costs of the litigation and reasonable attorneys' fees." § 150, second par., as amended by St. 2008, c. 80, § 5. See *Awuah* v. *Coverall N. America, Inc.,* 460 Mass. at 490 n.15. The plaintiff alleges she received written authorization from the Attorney General prior to the time she commenced the underlying action in Superior Court.

C. *Discussion.* 1. *Section 148A retaliation claim.* Without any explanation, the motion judge ruled, as matter of law, that "business expenses" are not covered by the Wage Act, in ordering the dismissal of the plaintiff's statutory claims. In effect, the judge's ruling implicitly failed to acknowledge the somewhat

---

[8]The aggrieved employee may commence a civil action upon the expiration of ninety days from the date a complaint was filed with the Attorney General, or sooner should the latter give her assent in writing. § 150, second par.

intricate § 148 claim that underlies this action. The judge's ruling cannot stand.

Section 148A of the Wage Act commands, "No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter." § 148A, first par., inserted by St. 1977, c. 590. Section 148A provides that an employer "who discharges or in any other manner discriminates against any employee because such employee has made a complaint to the attorney general *or any other person . . .* shall have violated [§ 148A] and shall be punished" (emphasis added). § 148A, second par., as appearing in St. 1999, c. 127, § 144.

The legislative policy advanced by § 148A is clear: "to encourage enforcement of the wage laws by protecting employees who complain about violations of the same." *Smith* v. *Winter Place LLC*, 447 Mass. at 368. In order to maintain an actionable claim under § 148A, a plaintiff is not obliged to successfully prove her right to seek recovery of the untimely paid "wages" in question. It is enough that a plaintiff, as here, reasonably believed the remuneration in question fell within the scope of the Wage Act. *Id.* at 367. See *id.* at 364 n.4, quoting from *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 121 (2000) (viability of retaliation claim "does not depend on the success of the underlying . . . claim, so long as the plaintiff can prove that [she] 'reasonably and in good faith believed the [employer] was engaged in wrongful [conduct under the Wage Act]' and that the '[employer's] desire to retaliate against [her] was a determinative factor in its decision to terminate [her] employment' ").

In the instant matter, the complaint alleges the existence of an expense reimbursement arrangement in which the employee is reimbursed for business expenses incurred on behalf of the employer. In the ordinary course, the violation of a standard expense reimbursement arrangement would not constitute a violation of the Wage Act because the reimbursement is not compensation "earned" by "labor, service or performance." *Massachusetts State Police Commissioned Officers Assn.* v. *Commonwealth*, 462 Mass. 219, 226 (2012), quoting from *Awuah*

v. *Coverall N. America, Inc.*, 460 Mass. at 492. However, this complaint alleges that the employer engaged in a pattern of nonpayment, coupled with continued demands that the employee advance expense monies in ever-increasing amounts, and fired her when she refused to advance any more money for the employer's benefit.

The Wage Act prohibits an employer from exempting itself from the timely and complete payment of wages by "special contract . . . or by *any other means.*" § 148, sixth par. This provision is strictly enforced. In *Awuah, supra,* the employer unlawfully classified workers as independent contractors. The Supreme Judicial Court determined that the employer's policy of treating employee's wages as "interest-free advances" constituted an impermissible "special contract" under § 148, and that the "chargebacks" — amounts employees were required to repay when customers failed to pay the employer — constituted improper deductions *that were not valid setoffs under § 150. Id.* at 490, 492-493. The requirement that employees maintain liability insurance, for the employer's benefit, also was determined to be a " 'special contract' that [had] the effect of exempting *the employer from the obligations to pay earned wages in full.*" The court observed, "An employer's insurance costs, when borne by an employee, reduce wages just as effectively as if the employer had obtained the policy and deducted funds from the wages." *Id.* at 497 n.22. See *ibid.*, quoting from 29 C.F.R. § 531.35 (2010) (" 'wages' cannot be considered to have been paid . . . unless they are paid finally and unconditionally or 'free and clear,' [and not] 'kick[ed]-back' . . . to another person for the employer's benefit").

In *Camara* v. *Attorney Gen.*, 458 Mass. 756 (2011), the employer maintained a written policy permitting it to make deductions from the wages of truckers involved in accidents, based on *the* employer's "unilateral assessment of liability [and the] amount of damages." *Id.* at 763. The Supreme Judicial Court likewise found a violation of the Wage Act's prohibitions against special contracts and all but "valid set-off[s]," holding that no such unilateral deduction could take place without an adjudication of fault that is procedurally fair. *Id.* at 763-764. To be sure, these cases involved impermissible "special contract[s]"

rather than employer conduct in violation of an otherwise valid written agreement, as is alleged here. However, as noted above, § 148 prohibits not just "special contract[s]," but also wage reductions achieved by "any other means," and all but "valid set-off[s]." The relevant precedent makes it clear that an employer may not reduce wages by, or condition the full and timely payment of wages on, payments by an employee to or on behalf of the employer. Wages must be paid both in a timely manner and in full. The arrangement alleged here falls short on both fronts.

Fairly read, the complaint alleges that the otherwise permissible expense reimbursement arrangement designed to benefit employees was abandoned and replaced with a policy and practice which required the employee, under penalty of discharge, to advance, indefinitely, expenses for the employer's benefit. Viewed in the light of *Camara* and *Awuah, supra,* this was a sufficient allegation of "reasonable belief" under *Smith* v. *Winter Place LLC,* 447 Mass. at 367, to withstand a rule 12(b)(6) motion on the retaliation claim.

2. *Tortious interference claim against the individual defendant.* A showing of actual malice is required in a tortious interference claim against a corporate principal. See *Weber* v. *Community Teamwork, Inc.,* 434 Mass. 761, 785-786 (2001); *Sklar* v. *Beth Israel Deaconess Med. Center,* 59 Mass. App. Ct. 550, 554 (2003). Proof that a corporate officer retaliated against an employee for raising a wage claim is sufficient to permit (but not compel) the inference that the plaintiff met the "heightened burden" of proving actual malice, see *Blackstone* v. *Cashman,* 448 Mass. 255, 261 n.10 (2007), that is, a "spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Weber* v. *Community Teamwork, Inc., supra* at 782. See, e.g., in the context of discrimination cases, *id.* at 782-783 (if discriminatory animus is determinative cause of termination, fact finder may take that into account in determining whether corporate officer acted with actual malice). Here, the tortious interference claim, like the retaliation claim itself, requires an assessment of state of mind, and should be evaluated on the basis of a factual record.

3. *Misrepresentation.* The gravamen of the complaint is that the plaintiff believed Perkett's assurances that she would be

paid in accordance with the contract, and forbore other employment opportunities in reliance on those allegedly false assurances. Perkett's alleged promise to uphold her written contractual obligations and make payment is not indefinite as matter of law; nor is reliance on a promise to honor a contractual obligation unreasonable as matter of law. See *Starr* v. *Fordham*, 420 Mass. 178, 188 (1995) (no clear error in judge's finding that partner reasonably relied on founding partner's representations regarding manner of calculating allocation of firm's profits where oral representation was not "clearly at variance" with written agreement). See also *Hurwitz* v. *Bocian*, 41 Mass. App. Ct. 365, 373 (1996) (in absence of written contract, evidence was sufficient on claim of deceit to support judgment for executive who relied on oral promises of company's sole shareholder to give her half of equity in company). Contrast *Masingill* v. *EMC Corp.*, 449 Mass. 532, 541 (2007) (reliance on prior oral representations that contradict terms of subsequently executed written contract is unreasonable as matter of law). Whether the plaintiff did actually rely on those promises, and whether her reliance ultimately was reasonable, are of course fact questions that may not be resolved on a motion to dismiss.

4. *Declaratory relief concerning nonsolicitation agreement.* The plaintiff sought a declaration that the noncompete provision in her contract was unenforceable, as too broad. Her complaint was sufficient to survive a motion to dismiss. See, e.g., *Novelty Bias Binding Co.* v. *Shevrin*, 342 Mass. 714, 716 (1961) (noncompete covenant may be enforced "provided it is necessary for the protection of the employer, is reasonably limited in time and space, and is consonant with the public interest[;] [w]hat is reasonable depends on the facts in each case"). Although the one-year term of the provision has long since expired, if the provision is determined to be unenforceable, it would still be open to the plaintiff to prove her damages. See, e.g., *All Stainless, Inc.* v. *Colby*, 364 Mass. 773, 781 (1974) (where, on appeal, since-expired noncompete agreement was determined to be valid in part, case was remanded for trial on damages).

D. *Conclusion.* So much of the judgment as dismisses counts 2, 4, 5, and 8 of the complaint is reversed.

*So ordered.*