NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-985                                          Appeals Court

   MARK W. WILLIAMSON, trustee,[1]  vs.  TAMAR BARLAM[2] & others.[3]


                         No. 22-P-985.

      Suffolk.     November 6, 2023. - February 15, 2024.

          Present:  Green, C.J., Blake, & Henry, JJ.


Real Property, Purchase and sale agreement, Restrictions,
     Condominium.  Condominiums, Management of trust, Derivative
     suit.  Contract, Interference with contractual relations,
     Implied covenant of good faith and fair dealing.  Consumer
     Protection Act, Sale of condominium unit.  Fiduciary.
     Waste.  Trust, Breach of trust.  Declaratory Relief.
     Practice, Civil, Dismissal, Amendment of complaint, Trustee
     of condominium management trust, Consumer protection case.



     Civil action commenced in the Superior Court Department on
November 5, 2021.

     A motion to dismiss was heard by Kenneth W. Salinger, J.,
and a motion for reconsideration was considered by him.

------------------------

     [1] Of the 902 Mass Ave Realty Trust and derivatively on
behalf of 902-912 Massachusetts Avenue Condominium Trust.

     [2] Individually and as trustee of the 902-912 Massachusetts
Avenue Condominium Trust.

     [3] David Barlam, Padraig O'Malley, Gabriel O'Malley, and
Stephanie Mamakos, individually and as trustees of 902-912
Massachusetts Avenue Condominium Trust, and Georgia Mamakos.

Gregory J. Aceto for the plaintiff.
James P. Lucking for the defendants.

BLAKE, J.  This case involves five commercial condominium units on Massachusetts Avenue in Cambridge and a condominium trust that contains a use restriction providing that no business conducted in any of the units shall "substantially compete" with a business operating in any other unit unless four of the five trustees assent in writing (noncompete clause).  The term "substantially compete" is not defined by the condominium trust. The plaintiff, Mark Williamson, filed suit in the Superior Court alleging, in pertinent part, that the defendants wrongly interfered with his efforts to sell his unit.  Following a hearing on the defendants' motion to dismiss Williamson's complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1976), the judge allowed the motion, entered a judgment of dismissal with prejudice, and denied Williamson's motion for reconsideration and renewed motion for leave to amend.  On Williamson's appeal, we affirm in part, and reverse in part.

Background.  Mark Williamson is the trustee of the 902 Mass Ave Realty Trust, which owns a commercial condominium unit located at 902-904 Massachusetts Avenue in Cambridge (unit). The unit is one of five units in a commercial condominium, which are managed through the 902-912 Massachusetts Avenue Condominium

Trust (trust), created by a declaration of trust dated February 20, 2007, and pursuant to G. L. c. 183A. Unit 906 houses the Mass Ave Diner (which serves breakfast, brunch, and lunch, and, after the trust was created, obtained a liquor license), and is owned by defendant David Barlam, the son of defendant Tamar Barlam (owner of 908 Massachusetts Avenue and trustee). Unit 912 houses The Plough and Stars (a full-service Irish bar and restaurant, which serves lunch and dinner, has live music and a liquor license) and is owned by Gabriel O'Malley, who also is a trustee. The remaining defendants include Padraig O'Malley (owner of 912 Massachusetts Avenue and uncle to Gabriel), Georgia Mamakos (owner of 912 Massachusetts Avenue), and Stephanie Mamakos (trustee and daughter of Georgia).[4]

The trust bylaws include a noncompete clause that is set forth in Article V, Section 5, of the trust and provides:

> "It is hereby agreed that no business conducted in any of the Units shall substantially compete with a business conducted in any other Unit unless four (4) Trustees assent thereto in writing. For purposes hereof it is hereby acknowledged that the businesses that exist at the time of recording this Declaration of Trust do not violate this provision."[5]

---

[4] As several defendants share a surname, we refer to them by their first names to avoid confusion.

[5] Each unit owner is entitled to appoint one of the five trustees.

The term "substantially compete" is not defined by the trust. Because the Mass Ave Diner and The Plough and Stars existed at the time that the trust was recorded, they "do not violate" Article V, Section 5, but the trust does not indicate whether these businesses do not "substantially compete" or whether they had sufficient trustee votes if they do "substantially compete." The trust does not otherwise give examples of what businesses would or would not substantially compete with each other such that if relationships between owners soured, there would be no governing standard.[6]

Williamson purchased his unit in 2007 after the creation of the trust. The Atomic Bean Café operated in the unit owned by Williamson from 2008 until it closed in the fall of 2020. In March 2021, Williamson entered into a purchase and sale agreement (P&S) with Christopher Willis to sell his unit. Willis intended to open a fine dining Italian restaurant with a full liquor license. Under the P&S, Willis could terminate the

---

[6] The attorney who drafted this provision testified at his deposition that at the time that he drafted the provision, the unit owners were getting along. This seems to be without consideration of what might occur if the unit owners did not all get along in the future, as is this case here. The record does not include any evidence of written assent to any degree of "substantial competition" between the two businesses; on the present record, it is at least a question of disputed fact whether the statement in the trust that the then existing businesses do not violate the provision should be construed as an interpretive guide or as a reflection that the businesses obtained written assents that do not appear in the record.

contract if he was unable to obtain the express written consent of four trustees if required by the noncompete clause. Willis's attempts to negotiate with the trustees failed; as was his right under the P&S, Willis cancelled the contract.

In October 2021, Williamson entered into a P&S with Yandi Huang, who intended to open a Japanese Asian cuisine restaurant in the unit, with a purchase price that was $175,000 less than Willis had offered. The P&S contained the same terms as the Willis P&S including the noncompete clause and the right to cancel if Huang did not secure the written assent of four trustees. Williamson alleges that "[a]s a result of the defendant's [sic] unreasonable conduct," this sale was never consummated.

Williamson brought suit in his individual capacity against all defendants for tortious interference with a contract, civil conspiracy, and violation of G. L. c. 93A (93A claim). He also brought suit in his capacity as trustee of the 902 Mass Ave Realty Trust against Tamar, Gabriel, and Stephanie for breach of fiduciary duty, and waste, mismanagement, and misappropriation of trust assets.[7] The verified complaint also contained a count

---

[7] The complaint did not name Ronald C. Clarizia, one of the original trustees of the 902-912 Massachusetts Avenue Condominium trust, a current trustee and owner of 910 Massachusetts Avenue, as a defendant. Clarizia's affidavit, filed with Williamson's opposition to the motion to dismiss, stated that the noncompete clause "was not meant to prevent a

for declaratory relief seeking multiple declarations, including that the noncompete clause be declared unenforceable. Williamson also asked, albeit in a prayer for relief, for a declaration that the businesses owned by David and Gabriel and the businesses proposed by Willis and Huang are substantially different such that the trustees' assent is not legally necessary under the noncompete clause.[8]

The defendants filed a motion to dismiss contending that the complaint failed to state a claim upon which relief could be granted, and failed to set forth any facts supporting Williamson's requests for declaratory relief. They requested that the complaint be dismissed with prejudice and without leave to replead. Williamson filed an opposition, and asked in the alternative for leave to amend the complaint, though he did not attach a proposed amended complaint. The judge allowed the defendants' motion and a judgment of dismissal with prejudice entered. The judge denied Williamson's motion to reconsider and

---

broad category of businesses or restaurants from opening in a Condominium Unit," and that Willis's and Huang's proposed restaurants did not substantially compete with the existing restaurants. Clarizia averred that the defendants were not acting in good faith, and "harm[ing]" the trust, thereby reducing the value of the units.

[8] Because there is no indication that Willis or Huang continue to be ready to purchase the unit from Williamson, we read this paragraph broadly as asking for an interpretation of the noncompete clause such that Williamson and the other owners know their respective rights and obligations.

renewed motion for leave to amend the complaint, again without a proposed amended complaint, but with a summary of the additional allegations he would include in an amended complaint. This appeal followed.

Discussion. The judge dismissed Williamson's complaint with prejudice "for the reasons stated in Defendants' initial and reply memoranda." This margin notation, without further explanation, gives us pause as to whether the judge construed the complaint in the light most favorable to Williamson, as he was required to do. See Buffalo-Water 1, LLC v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 17 (2018). Nonetheless, we review a motion to dismiss de novo, see A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transp. Auth., 479 Mass. 419, 424 (2018), and "[w]e limit our consideration to the factual allegations in the plaintiff's complaint, taking them as true and drawing all reasonable inferences in the plaintiff's favor." Porter v. Board of Appeal of Boston, 99 Mass. App. Ct. 240, 243 (2021).[9]

Williamson, individually and as a trustee, contends that dismissal of the complaint was erroneous, premature, and inequitable, and that the judge abused his discretion in denying

_____

[9] The complaint most often refers to "defendants" but sometimes refers to "defendant's" or "defendant" without specifying an individual defendant. We construe the references to defendants within the context of the complaint.

Williamson's requests for leave to amend and motion for reconsideration. Generally speaking, Williamson claims that the noncompete clause was not intended to prevent a broad category of businesses from opening in the unit, and that the defendants interfered with the sale of his unit. Williamson further contends that, among other things, he is entitled to a declaration that the proposed restaurant use of the unit did not violate the noncompete clause. We address each claim in turn.

1. The noncompete clause. Although at this stage of the proceedings we do not have the occasion to construe the noncompete clause at issue, we begin with a brief discussion of it as it is the underlying basis for most of Williamson's claims. Among other things, Williamson sought a declaration that the noncompete clause was unenforceable in these circumstances and was an unreasonable restraint on alienation facially and as applied, that the trustees' assent was not necessary, and that the noncompete clause was inapplicable to the proposed buyers. Massachusetts has long recognized that restrictions may be imposed on the uses that may be made of condominium units. See Franklin v. Spadafora, 388 Mass. 764, 774 (1983). See also G. L. c. 183A, §§ 8 (g) and 11 (e). "The most common standard [for reviewing provisions that restrict certain condominium uses] is equitable reasonableness" (citation omitted)." Noble v. Murphy, 34 Mass. App. Ct. 452, 457 (1993).

When a noncompete clause appears in originating documents, which predate the purchase of a unit, the review is "even more liberal" as here Williamson knew of and accepted the noncompete clause when he purchased the unit. Id. at 458. Thus, a noncompete clause "will not be invalidated absent a showing that [it is] wholly arbitrary in [its] application, in violation of public policy, or that [it] abrogate[s] some fundamental constitutional right" (citation omitted). Id. at 459. Though interpretation of a noncompete clause is largely a question of law, where (as in the present case) important terms of the clause are undefined it may be necessary to resort to parol evidence to construe its meaning and scope. In any event, the condominium trust is in essence a contract, and interpretation of a contract looks principally to the intent of the parties, construed in light of the facts and circumstances surrounding its creation. See, e.g., Kobayashi v. Orion Ventures, 42 Mass. App. Ct. 492, 496-497 (1997).

a. Tortious interference with a contract and civil conspiracy. To state a claim of tortious interference with a contract, [Williamson] must plausibly allege that "(1) he had a contract with a third party; (2) the defendant[s] knowingly induced the third party to break that contract; (3) the defendant[s]' interference, in addition to being intentional, was improper in motive or means; and (4) [Williamson] was harmed

by the defendant[s'] actions." Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994). The third element -- improper motive or means -- requires "something more than intentional interference." United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 815 (1990). The improper motive or means may include "deceit or economic coercion . . . or ill will" (quotations and citations omitted). Huang v. RE/MAX Leading Edge, 101 Mass. App. Ct. 150, 164 (2022), S.C., Huang v. Ma, 491 Mass. 235 (2023). To state a claim of civil conspiracy, Williamson must show "an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement." Bartle v. Berry, 80 Mass. App. Ct. 372, 383-384 (2011).

Taking the factual allegations in the light most favorable to Williamson, the complaint alleged that tensions developed between Williamson and the unit owners and trustees concerning the use and management of the trust property, ultimately causing the defendants to deliberately interfere with Williamson's efforts to sell his unit. Specifically, in response to Willis's attempts to secure the assent of the trustees for his proposed Italian restaurant, the defendants insisted that Willis enter into a nondisclosure agreement to prevent Williamson from learning the details of their discussions, including the financial concessions the defendants sought. In addition, the

complaint alleged that David and Gabriel unreasonably demanded that Willis pay them for every seat that Willis intended to place in his restaurant to secure their assent to the sale.[10] David, who was not a trustee, and therefore had no authority to withhold assent to the sale or negotiate concessions, allegedly told Willis that he was paying too much for the unit, and that he would never allow any restaurant to open in the unit. Williamson also alleged that David told him that he would never allow any restaurant to be opened in the unit under any circumstances. In addition, David told Willis's wife that he wanted to buy the unit because he already owned a unit, and Williamson's unit was on the other side.

Taking Williamson's allegations as a whole, David and Gabriel's actions can be fairly read as an effort to make it so difficult for Williamson to sell his unit, that he would agree to sell it to David at an artificially lower price. At bottom, David and Gabriel are alleged to have acted outside the ordinary course of bargaining by using threats, misrepresentations, and improper means to interfere with Williamson's efforts to sell his unit. The use of threats to interfere with a business is

---

[10] The complaint alleges that David and Gabriel demanded that "the Defendants receive payment for every seat" but there is no indication that the other defendants knew of this alleged demand. Based on Williamson's briefing, we understand that "defendants" in this context refers to David and Gabriel.

improper and antithetical to an assertion of rights.  See

Skyhook Wireless, Inc. v. Google Inc., 86 Mass. App. Ct. 611,

622 (2014) (exercise of rights not improper means but acting

through threats, misrepresentations of fact, and other improper

means may be).[11]  See also Huang, 101 Mass. App. Ct. at 164-165

(improper conduct includes ulterior motives, deceit, and

economic coercion).  Moreover, trustees such as Gabriel, cannot

put themselves in a position where their interests conflict with

the trust's interests.  See Kneer v. Zoning Bd. of Appeals of

Norfolk, 93 Mass. App. Ct. 548, 556 (2018).  And because these

claims require an assessment of the defendants' states of mind,

they should be evaluated on a full factual record, and not on a

motion to dismiss.  See Fraelick v. PerkettPR, Inc., 83 Mass.

App. Ct. 698, 708 (2013).  Moreover, the complaint alleged that

David and Gabriel "combin[ed] together in concerted action" to

interfere with the Willis P&S.  See Bartle v. Berry, 80 Mass.

App. Ct. at 383-384.  Accordingly, we conclude that Williamson

pleaded sufficient facts with enough heft to state a claim for

tortious interference with a contract and civil conspiracy to

tortiously interfere with the sale against David and Gabriel,

---

[11] To be clear, to the extent that a proposed business would substantially compete under the noncompete clause, there may be nothing inherently wrong in a substantially similar business ceding its rights under the noncompete clause for compensation such as a monetary payment.

and therefore these counts of the complaint should not have been dismissed against David and Gabriel.  See <u>Iannachino</u> v. <u>Ford Motor Co</u>., 451 Mass. 623, 636 (2008).

As to the remaining four defendants, the complaint identified Tamar and Stephanie as trustees, and Padraig and Georgia as unit owners.  Read as a whole, the complaint alleged that the proposed restaurants did not substantially compete, and by demanding concessions from the proposed buyers, the defendants deliberately interfered with the proposed sale.  This type of demand and its resultant impact on the P&S is sufficient to survive a motion to dismiss if the proposed restaurants do not substantially compete with the existing restaurants.  As discussed <u>supra</u>, the term "substantially compete" is undefined in the trust, and therefore on the facts as alleged, the question of whether the defendants' actions in withholding their assent to the sale to Willis was proper or improper cannot be determined on this record.  Put differently, it was error to dismiss these claims where the question of whether a fine dining Italian restaurant or a Japanese Asian restaurant "substantially competed" with at least the "Plough and Stars" (a full-service Irish bar and restaurant that serves lunch and dinner and has live music and a liquor license) cannot be determined by the plain language of the noncompete clause.

b.  Covenant of good faith and fair dealing.  Finally, every contract is subject to an implied covenant of good faith and fair dealing, see Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473 (1991), that requires that parties to a contract shall not do anything that would "have the effect of destroying or injuring the right[s] of the other part[ies] to receive the fruits of the contract."  Druker v. Roland Wm. Jutras, Assocs., Inc., 370 Mass. 383, 385 (1976).  The complaint plausibly suggests that there is a triable question whether the defendants violated the covenant of good faith and fair dealing by restricting the use of the unit and impeding the sale to Willis.  For this additional reason, dismissal was error.

c.  Chapter 93A claim.  Chapter 93A claims require unfair or deceptive acts or practices "in the conduct of any trade or commerce."  G. L. c. 93A, § 2.  Trustees are part "of a volunteer governing board" of the trust and therefore "are not engaged in trade or commerce."  Office One, Inc. v. Lopez, 437 Mass. 113, 125 (2002).  Williamson alleged that David and Gabriel are engaged in trade or commerce as restaurant owners and that the defendants engaged in a "willful or knowing pattern of deceit, unfair and deceptive acts and practices, and a deceitful course of conduct."  He further alleged that all of the defendants violated 93A by attempting to extort Willis, threatening Willis, and wrongfully inducing Willis to terminate

the P&S.  Because the 93A claim arises from the private relationship between Williamson and the trustees and condominium unit owners, these are principally private transactions that are not within the purview of a 93A claim.  See Zimmerman v. Bogoff, 402 Mass. 650, 662 (1988).[12]  Accordingly, the complaint was properly dismissed against all the defendants with the exception of David and Gabriel.  As David is neither a trustee nor condominium unit owner, he may be subject to liability under 93A.  Because Williamson alleged sufficient facts to survive a motion to dismiss as it relates to David, dismissal of this count of the complaint against David was error.  See Begelfer v. Najarian, 381 Mass. 177, 191 (1980) ("whether a private individual's" action "takes place in a 'business context' must be determined from the circumstances of each case").  Gabriel might also be liable for the 93A claim to the extent that he was not acting as a trustee.  Put differently, being a trustee does not protect Gabriel or anyone else from acts undertaken in a different capacity.  Although we express no opinion on the truth of the allegations or the strength of these claims, at this

---

[12] The defendants' reliance on L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc., 121 F. Supp. 2d 147 (D. Mass. 2000), is misplaced as there the issue was between abutting landowners who operated businesses.  By contrast here, the parties are condominium owners or business owners who are allegedly blocking competition from another business within a commercial condominium.

stage of the proceedings, dismissal of this count of the complaint against Gabriel was error. Cf. id. (record on summary judgment sufficient to determine defendants' actions did not take place in business context).

d. Breach of fiduciary duty and waste, mismanagement, and misappropriation of trust assets. Williamson, in his capacity as trustee, asserted claims against Tamar, Gabriel, and Stephanie, in their roles as trustees, for breach of fiduciary duty and waste, mismanagement, and misappropriation of trust assets. Trustees of a condominium association like Tamar, Gabriel, and Stephanie, owe a fiduciary duty to the association. See Berish v. Bornstein, 437 Mass. 252, 269 n.29 (2002). Trustees, however, do not owe a fiduciary duty to individual condominium unit owners. See Office One, Inc., 437 Mass. at 125. The defendants assert that the complaint used only "labels" and "conclusions," and failed to allege harm to the condominium trust separate and apart from the harm to Williamson.[13] The judge dismissed these claims with prejudice without taking action on Williamson's motion to amend the complaint and denying his motion for reconsideration without taking action on Williamson's renewed motion for leave to amend.

_____

[13] Williamson alleges that Willis offered to pay the defendants' condominium fees for the next four years but loss of that offer is not a waste of condominium assets -- the trust is owed that money regardless of who pays it.

Williamson contends that the judge abused his discretion.  We agree.

We review the denial of a motion to amend the complaint for abuse of discretion and note that leave to amend should be "freely given when justice so requires."  Tocci v. Tocci, 490 Mass. 1, 24 (2022).  Leave to amend may be denied if the motion was "unduly delayed or the amendment would be futile."  Id., citing Doull v. Foster, 487 Mass. 1, 22 (2021).  The judge made no findings regarding delay or futility.  Nor did the judge make findings as to the new evidence that Williamson alleged that he uncovered since he filed the original complaint, as set forth in his motion for reconsideration.  While it would have been better practice for Williamson to file a proposed amended complaint along with his motion to amend, Williamson's motion for reconsideration described the proposed amendment in enough detail to meet the notice pleading requirement.  Compare Nett v. Bellucci, 437 Mass. 630, 645-646 (2002) (memorandum that described proposed additional claim without proposed amended complaint attached sufficed for purposes of motion to amend) with Johnston v. Box, 453 Mass. 569, 582 (2009) (two-sentence footnote in opposition memoranda to motion to dismiss did not "adequately describe the contemplated amendment in order for [judge] to determine the merits of the motion")  Because the proposed amendment described in the motion for reconsideration

included factual allegations adequate to survive a motion to dismiss,[14] and the judge did not rule otherwise, it was an abuse of discretion to dismiss these claims.

2. _Declaratory relief_. Williamson's complaint sought ten declarations on an assortment of topics, as described _infra_, all of which the judge dismissed with prejudice. "[W]here a party moves to dismiss a properly brought declaratory judgment claim under rule 12 (b) (6) and where the judge concludes that the facts alleged in the complaint fail to state a claim upon which relief can be granted, the judge has the option of dismissing the claim or of declaring that, based on the facts alleged in the complaint, the plaintiff is not entitled to the declaratory relief sought." _Buffalo-Water 1, LLC_, 481 Mass. at 17-18. With this principle in mind, we conclude that the declarations related to the alleged tortious interference, civil conspiracy, breach of fiduciary duty, and waste, mismanagement, and misappropriation claims were improperly dismissed. We further conclude that all declarations related to the 93A claims were

---

[14] The proposed additional allegations included evidence from the attorney who drafted the noncompete clause about the intent of the language, evidence that David interfered with the proposed sales in order to keep the unit price artificially low in order to purchase the unit himself, and that David and Gabriel worked together to negotiate a transfer of the trust interests so that they could obtain a controlling interest in the trust.

properly dismissed as to all defendants with the exception of David and Gabriel.[15]

Williamson sought a declaration that the noncompete clause was unenforceable, an unreasonable restraint on alienation facially and as applied, the trustee's assent was not necessary, and it was inapplicable to the proposed buyers.  Relatedly, Williamson also sought declarations that the defendants' conduct damaged the value of his unit, and unreasonably interfered with his ability to sell the unit.  We conclude that Williamson "properly brought" a claim for declaratory relief as he has demonstrated that an actual controversy exists as to the application of the noncompete clause to the proposed restaurants, and specifically, whether they "substantially compete" with the current restaurants at that location, and its resultant impact on Williamson.  See Buffalo-Water 1, LLC, 481 Mass. at 18.  If the claim was "properly brought," the judge must then determine whether Williamson alleged facts, which if true, "state a claim for declaratory relief that can survive a . . . motion to dismiss."  Id.  The judge did not reach this

---

[15] The role of trustee cannot shield activity undertaken by the defendants if they were acting in a non-trustee capacity. Any such allegations could be repleaded by Williamson to make clear whether he alleges that the defendants were acting as trustees or not.

second part of the analysis as he prematurely dismissed these claims.  This was error.

3.  Conclusion.  So much of the judgment that dismissed the claims for breach of fiduciary duty (Count I), waste, mismanagement, and misappropriation of trust assets (Count II), tortious interference (Count III) and civil conspiracy (Count IV), and the 93A claim (Count V) against David and Gabriel, and the claims for declaratory judgment are vacated (Count VI).  We affirm the remainder of the judgment.

So ordered.